Margin D. LEE, Petitioner,

v.

HOUSTON FIRE AND CASUALTY IN-
SURANCE COMPANY, Respondent.

No. B–5343.

Supreme Court of Texas.

Nov. 26, 1975.

Rehearing Denied Dec. 23, 1975.

Harkness, Friedman & Kusin, Donald B. Friedman, Texarkana, for petitioner.

Atchley, Russell, Waldrop & Hlavinka, Howard Waldrop and Richard W. Whittaker, Texarkana, for respondent.

McGEE, Justice.

This is a workmen's compensation case. Margin D. Lee brought suit against the Houston Fire & Casualty Insurance Company seeking to set aside a final ruling of the Texas Industrial Accident Board denying his claim for workmen's compensation benefits because no claim was filed with the Texas Industrial Accident Board within six months after the occurrence of the accident as required by Article 8307, Section 4a Tex.

Rev.Civ.Stat.Ann. (1967). The trial court entered a judgment in favor of Lee based upon the jury's finding that good cause existed for the belated filing of his claim. The court of civil appeals reversed the judgment of the trial court and rendered a take-nothing judgment against Lee holding, as a matter of law, that Lee failed to establish continuing good cause for the delay in filing his claim with the T.I.A.B. 521 S.W.2d 739.

The issue before us is whether there is any evidence to support the jury's unanimous finding that the petitioner, Margin D. Lee, proved good cause existed for his failure to timely file a claim for compensation. The respondent, Houston Fire & Casualty Insurance Company, in agreeing with the court of civil appeals, contends that there is no evidence to support such a jury finding of good cause, maintaining that the record is devoid of any excuse for the late filing. We hold, given the facts and circumstances presented in this case, that sufficient evidence of good cause was presented such that the ultimate question was properly for the consideration of the jury. Therefore, because of the conclusion reached by the jury, the judgment of the court of civil appeals is reversed and the cause remanded to that court for consideration of the points it did not reach.

Lee, a 56 year old painter with a sixth grade education, sustained various injuries when he fell from a ladder. At the time of the accident he was working for Charles Hampton of Jefferson, Texas. Though the injuries were suffered on May 5, 1967, no claim for compensation was filed with the T.I.A.B. until June 16, 1970; a time period spanning approximately 37 months. Before us he argues that good cause existed for the delayed claim filing because of his belief that his employer or supervisor had filed such a claim on his behalf.

In workmen's compensation actions it is well established that the claimant must plead and prove that he timely presented his claim to the T.I.A.B. and that

if there existed a delay in the filing, he must show that good cause existed for his failure to file a claim within the statutory six month time limit. Tex.Rev.Civ.Stat. Ann. art. 8307, sec. 4a (1967). Further, when a claim has not been properly presented within the six month period, good cause must continue to the date when the claim is actually filed. *Texas Casualty Insurance Company v. Beasley*, 391 S.W.2d 33 (Tex. 1965); *Petroleum Casualty Co. v. Dean*, 132 Tex. 320, 122 S.W.2d 1053 (1939). The meaning of the term "good cause" was clearly set out in *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948):

> "The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."

With the above legal ground rules established, the record in the instant case must be reviewed in order to ascertain whether there is any evidence to support the jury's finding of good cause for the untimely filing. Upon reviewing a case where the court of civil appeals has held that no good cause existed as a matter of law, the appropriate review standard must be utilized. In *Moronko v. Consolidated Mutual Insurance Company*, 435 S.W.2d 846 (Tex.1968), this court stated that to hold as a matter of law good cause is not shown is to hold that there is no evidence to support the jury's finding that the test of ordinary prudence has been met. If there is any evidence of care and prudence in the prosecution of the claimant's rights, the sufficiency of the evidence is a question for the jury. *Texas Employers' Ins. Ass'n v. Crain*, 259 S.W.2d 905 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). Thus, whether the claimant has exercised that degree of diligence required under the ordinarily prudent person test is usually a question of fact to be determined by the jury or trier of fact. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948).

Lee sustained injuries on May 5, 1967 and on the same day consulted with a doctor since he had been rendered unconscious and had also injured his elbow in the fall. Lee was given medication to take daily and was back on the job the next day though he has complained of dizziness and persistent headaches ever since the mishap occurred. Four or five days after the accident Lee testified that he asked his employer Charles Hampton and his supervisor James Heim if they had sent in the necessary papers and if all was in order. In response Lee's supervisor stated that he had sent a report to the insurance company and that Hampton had sent one to the T.I.A.B.[1] A few weeks later another doctor with whom Lee had begun conferring gave Lee a report and advised him to deliver it to his boss to send to the Accident Board. Lee subsequently did so and testified that Hampton agreed to mail the report to the T.I.A.B.[2] Lee testified

---

1. The testimony elicited from Lee by his attorney on this point was as follows:
   Q. After you fell back in 1967 did you talk to Mr. Hampton about workmen's compensation benefits?
   A. Yes, sir.
   Q. All right. And what did your conversation consist of?
   A. I asked him had they sent in papers and all the papers, were they in order. And I also asked Mr. Heim, his Superintendent and asked him had they sent them in and he said they had, said, "I have sent in the one to the insurance company, Mr. Hampton sent in the one to the Accident Board."

2. On cross examination with reference to this point, Lee testified as follows:
   A. Dr. Shipp from Shreveport filled this out, a report, and he told me, said, "Give this to Mr. Hampton and tell him to mail it to the Accident Board in Austin." . . . And I gave it to Mr. Hampton in the Sherry Inn Hotel—Motel.

that a month or so after this, his supervisor again assured him that he had sent a report to the insurance company and that Hampton had mailed one to the Accident Board. Later, in August of 1967 Houston Fire & Casualty Insurance Company paid a $90 medical bill incurred by Lee. Thereafter, on April 8, 1969, an elapsed period of about 20 months, an independent insurance adjuster named Leach on behalf of the Houston Fire & Casualty Insurance Company contacted Lee with reference to a final settlement. Over the next 13 or 14 months Leach met with Lee on many occasions. Lee testified that the insurance adjuster assured him not to worry about workmen's compensation benefits; that he would be taken care of. In June of 1970 Lee was informed that no claim had ever been filed and that he would receive no compensation for his injuries. Shortly thereafter, Lee was discharged from the painter's position he had held with Hampton's company for the past 18 years. On June 16, 1970 Lee personally filed a claim with the T.I.A.B.

■ The totality of Lee's conduct must be considered as elemental in determining ordinary prudence. *Moronko v. Consolidated Mutual Insurance Company*, 435 S.W.2d 846 (Tex.1968); *Texas Employers Ins. Ass'n v. Fowler*, 140 S.W.2d 545 (Tex.Civ.App.—Amarillo 1940, writ ref'd). In the present case we are confronted with facts revealing that Lee sustained injuries while in his eighteenth year of employment for a man he trusted and considered to be a friend. He returned to work full time the day after the accident and was paid the same or a greater hourly wage than that he had been receiving prior to the accident. On more than one occasion within a few months after the mishap, he had been assured by both his employer and supervisor that the proper papers had been filed on his behalf. Months after the accident the insurance company paid in full Lee's medical bills. Many months thereafter the insurance company was attempting to negotiate a settlement with Lee. Given these facts, there existed a sufficient evidentiary basis to take the question of good cause to the jury.

■ Lee was not fully cognizant of the fact that a claim was required to have been filed with the Texas Industrial Accident Board within a statutorily prescribed period of time. Since a claimant is presumed to know that a claim must be presented within six months of the accident, ignorance of the six month filing requirement will not excuse a failure to timely comply. *Allstate Insurance Company v. King*, 444 S.W.2d 602 (Tex.1969). In the instant case, ignorance of legal duties is not our question as there is also evidence that Lee relied on his employer or supervisor to file whatever papers were necessary on his behalf.[3] Reliance on statements of employers or their agents may constitute good cause for a delayed filing. *Twin City Fire Insurance Company v. King*, 510 S.W.2d 370 (Tex.Civ.App.—Houston [1st Dist.] 1794, writ ref'd n. r. e.).

■ Both the court of civil appeals and the respondent insurance company rely heavily on the decision announced by this court in *Allstate Insurance Company v. King*, 444 S.W.2d 602 (Tex.1969), as supportive of their argument that there is no evidence to support the jury's finding of good cause in the present case. In *King*, the court held that there was no evidence to support the jury's finding of good cause for King's failure to file his claim until 16 months after his accident. Due to the factual pattern present in *King*, that case is clearly distinguishable from the case at bar.

Q. All right. And he told you he would send that in?
A. He told me he would mail it in the next day, he had to fix out some papers to go in with it.
Q. But that was a report from Dr. Shipp, am I right on that?

A. No. That was a report to the Accidental Board.

3. See, *Maleski v. Texas Employers Insurance Association*, 471 S.W.2d 416 (Tex.Civ. App.—Corpus Christi 1971, no writ); *General Accident Fire & Life Assurance Corp. v. Hardin*, 290 F.2d 862 (5th Cir. 1961).

King was injured on February 23, 1965 and because the injuries sustained impaired his working ability, he was discharged from his job less than two months later on April 13, 1965. In *King*, the injured employee was fully aware of the seriousness of his injuries and of his incapacity. Nevertheless, he received no benefits of any kind from either his employer or the insurance company after he had ceased working. Regardless of this fact, King filed no claim seeking compensation for these injuries until 14 months after his discharge on June 9, 1966. A further differentiating factor presented in *King* is that no one ever contended that anyone had told King that a claim had actually been sent to the Texas Industrial Accident Board on his behalf. Therefore in *King* the court correctly held that a person of ordinary prudence would not have remained totally inactive and unconcerned about his rights as long as King did in sole reliance upon his employer's promise to file a claim. In the cause before us much more is present than sole reliance on an employer's promise to file a claim since Lee testified he was told that a report had actually been sent to the Texas Industrial Accident Board. Lee did not rely on a future promise but upon a present, purportedly completed act.[4] *King* is clearly distinguishable and therefore it is not determinative of the outcome of this case. The other authorities relied upon by the respondent insurance company are also readily distinguishable. In the situations therein presented it is abundantly apparent that the claimant failed to act as an ordinarily prudent person.

Given the totality of the facts, circumstances, and conduct presented us, combined with the stringent appellate review standard operative in such cases, we cannot agree that the evidence presented in this particular controversy reveals that the late filing was due to a lack of diligence as the only reasonable conclusion. It may not be said as a matter of law that good cause did not exist for the untimely filing. Therefore, the judgment of the court of civil appeals is reversed and the cause remanded to that court for consideration of the points it did not reach.

---

4. *See, Travelers Insurance Company v. Echols*, 508 S.W.2d 422 (Tex.Civ.App.—Texarkana 1974, no writ); *Texas General Indemnity Co. v. Youngblood*, 466 S.W.2d 329 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.).