**PROVIDENCE LLOYD'S INSURANCE COMPANY, Appellant,**

v.

**Jeanette Hobbs SMITH, Individually and as Representative of the Estate of Silas Howard Smith, Deceased, Appellee.**

**No. 3–91–281–CV.**

Court of Appeals of Texas,
Austin.

April 8, 1992.
Rehearing Overruled May 6, 1992.

Steven M. Tipton and Robert D. Stokes, Flahive, Ogden & Latson, Austin, for appellant.

Derrel Luce, Waco, for appellee.

Before CARROLL, C.J., and ABOUSSIE and SMITH, JJ.

CARROLL, Chief Justice.

This appeal involves the late filing of a claim by Jeanette Hobbs Smith for workers' compensation death benefits. Following a jury trial, the district court rendered judgment against the carrier, Providence Lloyd's Insurance Company. We will affirm the judgment of the trial court.

## BACKGROUND

On January 11, 1986, Silas Howard Smith, while attending a seminar in the course of his employment, fell to the ground, striking and injuring his knee. Later that day he was taken to the hospital emergency room, where, to relieve Mr. Smith's pain, the attending physician prescribed Tylenol containing codeine, even though both Mr. and Mrs. Smith informed the doctor that he could not take codeine. The next day Mr. Smith began vomiting and grew weaker; his personal physician admitted him into the hospital where he died two weeks later. The jury found that the work-related injury and subsequent medical care caused Mr. Smith's death and this finding is not disputed on appeal.

Providence Lloyd's instead attacks the legal and factual sufficiency of the evidence to support the jury's finding that Mrs. Smith had good cause for delay in filing a claim with the Industrial Accident Board (IAB). Evidence at trial suggested that Mrs. Smith had relied on assurances by officers of S.P.J.S.T., the fraternal life insurance company and benevolent society which employed her husband, that they were taking care of the filing of the workers' compensation claim. The jury apparently believed that Mrs. Smith acted reasonably in her reliance on these statements, and the district court entered judgment for Mrs. Smith.

## DISCUSSION

### I. LEGAL SUFFICIENCY

In its first point of error, Providence Lloyd's attacks the legal sufficiency of the evidence to support the finding that Mrs. Smith had good cause for delay. When reviewing legal sufficiency points of error, we must consider only the evidence and inferences tending to support the finding, and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986).

It is well settled in Texas that an employer's representation that the claim is being handled can excuse an employee's failure to timely file a workers' compensation claim. *See Lee v. Houston Fire and Casualty Ins. Co.*, 530 S.W.2d 294, 296 (Tex.1975), and *Texas Employer's Insurance Association v. Herron*, 569 S.W.2d 549, 554 (Tex.Civ.App.1978, writ ref'd n.r.e.). However, the sole test for permissible delay in filing a workers' compensation claim remains whether the claimant acted as a reasonably prudent person would have under the circumstances. *Texas Casualty Ins. Co. v. Beasley*, 391 S.W.2d 33 (Tex.1965). Generally, a one-time representation by the employer that the claim will be taken care of is not suffi-

cient to make inaction on the part of the claimant reasonable. *See Consolidated Casualty Ins. Co. v. Perkins,* 279 S.W.2d 299 (Tex.1955), and *Texas Employer's Ins. Ass'n v. Coronado,* 519 S.W.2d 517 (Tex. Civ.App.1975, writ ref'd n.r.e.). *But cf. Standard Fire Ins. Co. v. Morgan,* 745 S.W.2d 310, 311 (Tex.1987).

■ The relevant question in this case is whether a reasonably prudent person in Mrs. Smith's position would have remained inactive in reliance on the representations by the officers of S.P.J.S.T. *Coronado,* 519 S.W.2d at 519. Mrs. Smith testified that she was assured repeatedly by Bernie Gebala, the vice-president of S.P.J.S.T., that "everything would be taken care of." Mrs. Smith further testified that she believed that when Gebala said "everything" this included the workers' compensation claim, and since this is a legal sufficiency point of error we must accept Mrs. Smith's reasonable interpretation of their conversations. *See Morgan,* 745 S.W.2d at 311 (the jury found that the claimant's inaction was reasonable based solely on the claimant's own testimony that her employer promised that "everything would be taken care of"). The fact that Gebala was a close personal friend of the Smiths enhances the reasonableness of her reliance on his reassurances. *See Lee,* 530 S.W.2d at 296.

Additionally, several months after her husband's death, Mrs. Smith visited the offices of S.P.J.S.T. to check on some of her husband's affairs, including the workers' compensation claim. She spoke with Leonard Mikeska, the S.P.J.S.T. officer in charge of workers' compensation, and according to Mrs. Smith, he stated specifically that he had filed the claim. This evidence is sufficient to overcome the distinction made in some cases between promised future action by an employer and a bald factual statement that the claim has already been filed. These cases suggest that a promise of future action alone should not completely reassure the reasonably prudent person. *Compare Bray v. Texas Employer's Insurance Ass'n,* 483 S.W.2d 907 (Tex.Civ.App.1972, writ ref'd n.r.e.) (mere promise of future action insufficient) *with*

*Morgan,* 745 S.W.2d 310 (promise of future action was sufficient under the circumstances). There is, therefore, more than a scintilla of evidence suggesting that a reasonably prudent person would have relied on the statements made by the officers of S.P.J.S.T.

Providence Lloyd's further attacks the legal sufficiency of the verdict by alleging that any initial good cause that Mrs. Smith might have enjoyed evaporated either when she received notice and claim forms from the IAB, or when she contacted her attorney, Ben Harvie, about the potential workers' compensation claim. Even if the receipt of notice and claim forms should have alerted Mrs. Smith to the need to file, her conversation with Mikeska, in which he said that the claim had already been filed, came after receipt of the forms. This statement by Mikeska, along with Gebala's frequent if broadly phrased assurances, supports the jury's apparent conclusion that Mrs. Smith reasonably believed that she had no affirmative duty to file.

Providence Lloyd's next argues that any good cause for delay could not exist after September 1986 when Mrs. Smith first discussed the workers' compensation claim with her attorney, Ben Harvie. In a meeting held to discuss a medical malpractice claim arising out of Mr. Smith's death, the topic of workers' compensation arose when Harvie advised Mrs. Smith that she might also have such a claim. Mrs. Smith, however, told Harvie that S.P.J.S.T. was handling the claim for her, and Harvie apparently did not force the issue because he believed Mrs. Smith's statement and because the claim was not adversarial in nature at that time.

Providence Lloyd's also contends that at the very latest, once Mrs. Smith employed Harvie to represent her in the matter of the workers' compensation claim, any good cause for delay that she previously enjoyed ended at that time. They argue that the two and one-half months that Harvie took to file the claim was an unreasonable period of time, and the letter by which Harvie notified the IAB of the claim was insufficient for that purpose. We disagree.

Mrs. Smith's suspicions were first aroused when she inadvertently received a copy of the employer's report to the IAB filed by S.P.J.S.T. This report contained factual statements about how Mr. Smith hurt his knee which Mrs. Smith did not agree with and she therefore employed Harvie to investigate the matter on September 3, 1987. Harvie personally contacted the IAB and, on November 19, 1987, he followed up the call with a letter to the Board asking for copies of the documentation already in the file. That letter, read in the light most favorable to the jury's finding, suggests that Ben Harvie still believed that the claim had already been filed. The IAB responded with a letter dated February 8, 1988, in which they notified Harvie that the employer had controverted the case. The IAB also enclosed forms for filing a claim, which Mrs. Smith and Harvie filled out and returned by February 12, 1987, four days later.

The record contains some evidence, therefore, that the post-attorney involvement delay was reasonable for purposes of investigating, preparing, and filing the claim. *Texas Employer's Ins. Ass'n v. Brantley*, 402 S.W.2d 140 (Tex.1966). The question of whether Harvie's original letter of inquiry to the IAB was sufficient to constitute notice is irrelevant given Mrs. Smith's and Harvie's belief that a claim had already been filed. Harvie's letter, in fact, speaks of the claim as having been filed and only requests forms for indicating that Harvie would be representing Mrs. Smith in any further action on the matter.

We conclude, therefore, that the record contains sufficient evidence to support the jury's finding that Mrs. Smith had good cause for delay in filing the workers' compensation claim resulting from the death of her husband. Accordingly, we overrule Providence Lloyds' legal sufficiency point of error.

## II. FACTUAL SUFFICIENCY

In its second point of error, Providence Lloyd's attacks the factual sufficiency of the evidence to support the jury's finding that Mrs. Smith had good cause for delay.

In ruling on this point, we must consider all of the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The evidence introduced by the defendants at trial is, at best, weak. At no time during his testimony did Gebala deny having had frequent contact with Mrs. Smith after her husband's death, nor did he deny reassuring her in broad terms. Furthermore, the testimony of both Mrs. Smith and Bernie Gebala demonstrates the depth of the friendship that had existed between them. Gebala wrote the eulogy for Mr. Smith's funeral, and in a letter to Mrs. Smith he called himself a lifelong friend. Nor does the testimony of Mikeska refute Mrs. Smith's testimony that he told her that a claim had been filed.

Much is made by Providence Lloyd's of a letter written by Mrs. Smith and addressed to Gebala. In the letter she claims that she felt betrayed by Gebala because of statements he made in answer to a request by her attorney regarding the medical malpractice claim. Providence Lloyd's suggests that if she did feel betrayed by these statements she could not have continued to reasonably rely on Gebala's assurances, which did continue even after she wrote the letter. However, Mrs. Smith's sense of betrayal by Gebala in this matter does not necessarily suggest that she should have discontinued her trust in Mikeska's previous statement that the claim had in fact been filed, nor does it mean that she necessarily could not trust Gebala, a self-professed lifelong friend, on any other matter. Moreover, the frequent phone conversations continued between Mrs. Smith and Gebala, and Gebala wrote a letter to Mrs. Smith in which he again reassured her that he was treating her as fairly as he could.

Competent evidence of probative force exists in the record to support the conclusion that Mrs. Smith reasonably believed the representations by officers of S.P.J.S.T. that they were taking care of her claim. The appellant has produced no evidence which casts any real doubt on this conten-

tion. Accordingly, we overrule Providence Lloyd's factual sufficiency point of error, and affirm the judgment of the trial court.